## Ex parte HALKIDES.

(District Court, W. D. New York. August 7, 1923.)

### No. 2387.

Aliens ☞53—Inference warranted of intent to enter country at will, so as to justify deportation to country of birth.

Inference *held* warranted that alien, coming to United States from Canada after living there some time, and afterwards returning to Canada and again unlawfully entering the United States, at all times intended to enter the country in disregard of Immigration Act, whenever it suited his purposes, so as to authorize deportation to Greece, the country of his birth, from which he came to Canada.

Habeas Corpus. Petition by Elias Halkides for a writ to secure release from order of deportation. Writ dismissed.

Jay T. Barnsdall, of Buffalo, N. Y., for petitioner.

William J. Donovan, U. S. Atty., of Buffalo, N. Y. (Samuel J. Dickey, Asst. U. S. Atty., of Buffalo, N. Y., of counsel), for the United States.

HAZEL, District Judge. The petitioner is awaiting deportation to Greece, his native country, under order of deportation of the acting Secretary of Labor. He has applied for a writ of habeas corpus, contending that he cannot legally be deported to Greece under the Immigration Act, but that his deportation must be to Canada, the country from whence he came.

It appears that in May, 1912, the petitioner admittedly deserted an ocean steamship, upon which he was employed as marine fireman, and landed at New Castle, New Brunswick, Canada; that he afterwards resided in Canada most of the time, though in 1915 he entered the United States, returning to Canada in 1917, where he lived until July, 1922, when he illegally entered the United States at Niagara Falls (without a passport and without inspection). While here he sent money to Alice Tompkinson, who then lived in Canada, and induced her to enter the United States. She came, and they lived together as man and wife, as they had previously lived in Canada. He testified that he was not married to her, though his counsel claims there was a common-law marriage and a civil marriage under the laws of this state. The latter marriage was consummated by advice of counsel after the petitioner was taken into custody.

The finding of the Secretary of Labor on the evidence submitted to him was that, being an alien, the petitioner was found here in violation of the Act of February 5, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼a et seq.); that he was a contract laborer at the time of his entry, that he imported, or attempted to import a person for immoral purposes, that he entered without inspection, and also that he was a person likely to become a public charge.

The petitioner has never applied for Dominion citizenship. The government claims that it does not appear affirmatively that he was

domiciled in Canada, and accordingly, under section 20 of the Immigration Act of February 5, 1917 (39 Stat. 890), he must be transported to the trans-Atlantic or trans-Pacific port from which he embarked for the United States. This originally read as follows:

"The deportation of aliens * * * within the United States after entry and found to be illegally therein, provided for in this act, shall be to the trans-Atlantic or trans-Pacific ports from which said aliens embarked for the United States; or, if such embarkation was for foreign contiguous territory, to the foreign port at which said aliens embarked for such territory."

Construing that provision, it was said by this court in Ex parte Jung Sew, 221 Fed. 500:

"This provision would seem to indicate the legislative intent that aliens unlawfully entering the United States may be returned to the country of their birth, if they embarked from there for the United States or territory bordering thereon."

In affirming the Jung Sew Case, the Circuit Court of Appeals said that, since the inspector had found that the petitioner had entered surreptitiously without inspection at Buffalo, he could properly be deported to China, instead of to Canada, if he came from China to Canada with the intention of being smuggled into the United States.

In Lee Sim v. U. S., 218 Fed. 432, 134 C. C. A. 232, the Circuit Court of Appeals for this circuit, in affirmance of the decision by this court, expressed the opinion that, as to the place to which the relator should be deported, the principle was to be applied that was announced by the Supreme Court in Lewis v. Frick, 233 U. S. 291, 34 Sup. Ct. 488, 58 L. Ed. 967; and on the facts showing clandestine entry, the petitioner was directed to be deported to China.

In Lewis v. Frick, the court, in its interpretation of section 35 (since re-enacted as section 20 of the alien immigration law passed February 5, 1917), said that it indicated the legislative intent that aliens subject to deportation shall be taken to trans-Atlantic or trans-Pacific ports if they came thence, rather than to foreign territory on this continent. Although the petitioner, as the evidence shows, lived in Canada for a period of about four years before his entry into the United States, he had previously entered illegally under an assumed name, and wandered about, and worked in New York and West Virginia, and later returned to Toronto. The inference is not unwarranted that at all times he had an intention of entering this country from Canada, in disregard of the Immigration Act, and whenever it suited his particular purpose so to do. See, also, Lavin v. Le Fevre, 125 Fed. 693, 60 C. C. A. 425; Ex parte Hamaguchi (C. C.) 161 Fed. 185.

Of course, if he had been stopped at the border, his return to Canada would have been required. In such case he would not have been found unlawfully in the United States, within the meaning of the Immigration Act. The facts of the Granitz Case, cited by petitioner, are not before me, but I think it is safe to presume that they showed that the petitioner in that case was not found unlawfully in the United States.

Counsel for petitioner relies on Ex parte Gytl (D. C.) 210 Fed. 918; but there the facts were widely different, as a careful reading will

show. In that case the aliens, who had been employed in Canada as farmers in North Dakota near the Canadian border, were taken by their employer without their knowledge or sanction across the line to work. The court properly held, I think, that they should be returned to Canada, and not to Austria, from whence they came to Canada.

The deportation of the petitioner herein to Greece, the country from whence he came to Canada, was right, and the writ must be dismissed.