**Ex parte NAOE MINAMIJI.**

District Court, S. D. California, Central Division. December 4, 1929.

No. 9757–M.

J. Edward Keating, of Los Angeles, Cal., for petitioner.

S. W. McNabb, U. S. Atty., and Wm. R. Gallagher, Asst. U. S. Atty., both of Los Angeles, Cal.

JAMES, District Judge. The petitioner is a female person, about 23 years of age, and a native and subject of Japan. She sought to be allowed to enter the United States as the wife of a Japanese alien, who, it is conceded, is entitled to reside in this country. In December, 1928, the husband left the United States on a trip to Japan, and while there married petitioner, and secured for her the visa of the American Consul as a nonimmigrant at the port of Yokohama. The husband was admitted as a returning resident, and his wife was held for deportation. The claim made on behalf of the wife is that her husband had the status of a trader or merchant, as established prior to his temporary trip to Japan. If it is true that the husband had attained the status claimed for him, he then would belong to the nonimmigrant class as being "an alien entitled to enter the United States solely to carry on trade under and in pursuance of the provision of a present existing treaty of commerce and navigation." Section 203, title 8, subd. (6), U. S. Code (8 USCA § 203(6). A board of review refused to disturb the decision of the immigration officers at the port.

The decision of the board of review was placed upon two grounds: (1) That the petitioner's husband not having been admitted as a "treaty merchant," the wife could not claim the status which it is insisted that she had acquired; (2) that the evidence did not show that the husband came within the meaning of the provisions above quoted.

In connection with the latter finding, the board of review said: "He (the husband) has been employed as an outside salesman by the Nippon Company; he also owns stock in the company. The company is a domestic corporation and is not a branch of a foreign concern. It is claimed that the company sells in its store approximately 60 to 65 per cent. goods imported from Japan. It does not follow that every domestic concern which might sell goods imported from a foreign country can claim a status as treaty merchants for its employees who might be nationals of the country from which the domestic corporation purchases its foreign goods."

It has been settled by the Supreme Court of the United States, where a Chinese person has been involved, that although the wives of merchants are not specifically named as being entitled to the privilege of entry as is given their husbands, nevertheless they are entitled to be admitted. Cases need not be particularly cited. A similar privilege under treaty terms may be conceded to Japanese. The sole question to be determined, as I view it, is as to whether there is evidence in the record made before the examining immigration officers which justifies the conclusion that the husband was not, at the time of his re-arrival in the United States, a person engaged in carrying on trade in pursuance of the provisions of an existing treaty of commerce and navigation with Japan.

██ I am not of the view, referring to the first conclusion expressed by the board of review of the Labor Department, that the character that was given to the alien husband by the certificate under which he made the temporary trip to Japan is conclusive as to his status. I think that it was open to him to establish his right to enter the country under any character which the facts justified.

As to the second ground expressed in the board's decision: The petitioner's husband, prior to January, 1927, had worked in the United States as a laborer. At about the month referred to, he entered the employ of the Nippon Company, a merchandising concern with a considerable capital, organized as a corporation under California laws. The stock was divided into 400 shares. For three or four months he worked as a messenger,

and then became outside sales manager. He acquired at least 20 shares of stock of the Nippon Company before his departure for Japan, for which it was testified he paid $75 per share. He received one dividend of $300 on his shares. He was not a director or officer of the corporation. He left for Japan on his temporary trip on December 4, 1928. The manager of the Nippon Company, by his testimony, left the impression of some uncertainty as to whether the petitioner's husband would again re-enter their employ. He did state: "I am the manager and I want to have him in the store but I have to ask him his own desires in the matter first."

There have been numerous decisions involving the question as to whether Chinese in particular cases should be classed as "merchants." Some decisions indicate that to satisfy that description would require that the person be engaged in trading in foreign merchandise. Ex parte Chan Hai (D. C.) 11 F.(2d) 667. The Chinese Exclusion Act, the terms of which were considered in Tom Hong v. U. S., 193 U. S. 517, 24 S. Ct. 517, 519, 48 L. Ed. 772, contained a definition of the term "merchant," as therein used (8 USCA § 289), as being "a person engaged in buying and selling merchandise, at a fixed place of business, which business is conducted in his name, and who, during the time he claims to be engaged as a merchant, does not engage in the performance of any manual labor except such as is necessary in the conduct of his business as such merchant."

Decisions have been liberal in construing the law as applicable to Chinese merchants. In our own circuit, [Weedin v. Wong Jun, 7 F.(2d) 311], it was held that a bookkeeper and cashier of a Chinese restaurant, owning an interest therein and performing no manual labor in connection therewith, is entitled to be classed as a merchant.

██ The Treaty made by the United States with Japan in 1911, U. S. Sts. at Large, vol. 37, part 2, page 1504, guarantees to the subjects of the two countries liberty to "enter, travel and reside in the territories of the other to carry on trade, wholesale and retail. * * * " It seems apparent that a "trader" entering the country in pursuance of the treaty guaranty would be one whose business it was to deal particularly with products, manufactured or of other kind, of his own country, and including possibly imported products of different countries. In this view, a Japanese trader would be more restricted in the liberty of his commercial transactions than the Chinese "merchant," as the latter is defined by the Chinese Exclu-

sion Act, and as the term is interpreted by the decisions. However, the finding of the immigration board does show that the majority of the merchandise handled by the Nippon Company is imported from Japan, and the fact that some merchandise of American manufacture is also sold would not be sufficient to deprive the company of its character as a commerce treaty trader. But the question as to whether the interest and activities of the husband of petitioner, as connected with the mercantile establishment, were sufficient to entitle him to be rated under that classification, is more than doubtful. Under the facts recited, the immigration officers were entitled to view with distrust the good faith of the husband's work with and investment in the Nippon Company's business. His transformation from a farm worker to that of an owner of stock in and employment with the Nippon Company preceded very closely his departure for Japan and the bringing back of the young wife. Moreover, if the mere ownership of shares of stock in such a company confers the character of a commerce treaty trader upon the holder, then the ownership of any number of shares, be they large or small, less than a controlling interest, would effect the same result. And I am not of the opinion that such is the proper view to be taken.

Concluding, then, that the principal finding of the immigration officers is sustained by substantial evidence, the writ should be discharged, and the petitioner remanded to the custody from which she comes. It is ordered that petitioner surrender to the immigration officers within ten days from date hereof.