## Ex parte HARUYE SUZUKI.

District Court, S. D. California, Central Division. December 4, 1929.

No. 9758–M.

J. Edward Keating, of Los Angeles, Cal., for petitioner.

S. W. McNabb, U. S. Atty., and Gwyn S. Redwine, Asst. U. S. Atty., both of Los Angeles, Cal.

JAMES, District Judge. This case involves the question of the right of a Japanese woman to enter the United States for the first time under the claim that she is so entitled because her husband has the status of a treaty trader or merchant. A discussion of the Immigration Law, as it affects Japanese women under the circumstances claimed, is contained in the opinion filed in this court this day, in the habeas corpus matter of Naoe Minamiji, No. 9757–M, 36 F.(2d) 422. It will not be necessary to repeat here the views as expressed in the case referred to. The facts, however, as they are represented in this record, as showing the character of the mercantile business engaged in by the husband of the petitioner, are different from those presented in the Minamiji Case. The husband here first entered the United States in September, 1923. He remained in the country continuously until January 26, 1929, when he departed for Japan, from which country he returned on April 29, 1929. He married petitioner while in Japan on this trip and sought to have her enter with him. The husband was admitted as a returning resident and the wife was ordered deported.

Before the immigration officers the husband testified that the Mutual Trading Company, of which he was a vice president, was incorporated under the laws of the state of California; that the company was organized by several Japanese grocers, of which the father of petitioner's husband was one; that the father later went to Japan, and turned over his stock interest in the trading company to the son; that he (the son) was elected first vice president in January, 1928; that his duties were to examine the company's books and examine goods imported from Japan, and to determine, with the president, the price, and attend directors' meetings once each month; that he usually devoted about one hour each day to the business, which employed six salaried helpers; that the capital stock of the trading company was divided in-

to 200 shares of the par value of $500 per share, with $40,000 paid-in capital; that the stockholders numbered about thirteen; that the merchandise handled by the trading company consisted of canned goods, medicines, Japanese sauces, rice, general groceries, and kitchen utensils; that the value of stock on hand was about $30,000; that the invoice value of merchandise imported from Japan for the preceding year was about $150,000, all of which was bought direct from Japan and not through intermediaries.

It was shown further by the testimony of the husband of petitioner that he separately owned and conducted a grocery store in Los Angeles, with a stock which included both American and Japanese merchandise, the value of the Japanese portion of the stock being stated to be about $3,000, which the witness said he bought through the Mutual Trading Company. He testified also that four officers of the Mutual Trading Company conducted similar separate grocery stores, and that these grocery stores took about 4 per cent. of the Japanese goods handled by the trading company.

I feel satisfied in this case that the evidence established, and that, too, without any conflict shown either directly or by reasonable implication of doubt, that the Mutual Trading Company could properly claim the character of a treaty trader, and that the petitioner's husband, having an actual interest in the business, and having a part in the direction, management, and control thereof, should be assigned the same status.

It is the judgment of the court that petitioner is entitled to be discharged from the custody of the immigration officers. It is so ordered.